**Harry Moses SENECA**

v.

**CALIFORNIA OIL COMPANY and Producers Drilling Company.**

**No. 8851.**

United States District Court
W. D. Louisiana,
Lafayette Division.

Dec. 3, 1964.

Nichols & Drewett, E. M. Nichols, Lake Charles, La., Brown, Bates, Brock & Morgan, Ben N. Ramey, Houston, Tex., for plaintiff.

Davidson, Meaux, Onebane & Donohoe, J. J. Davidson, Jr., Lafayette, La., for Producers Drilling Co. and Liberty Mut. Ins. Co.

Porteous & Johnson, Lloyd C. Melancon, New Orleans, La., for California Oil Co.

PUTNAM, District Judge.

The main demand of the libelant in this case has been compromised and the sole issue remaining for determination is a demand for indemnity brought by the California Company in a cross-claim against the defendant Producers Drilling Company and a petition of impleader filed against its insurer, Liberty Mutual Insurance Company.

The claim arises out of a provision found in paragraph 14 of a drilling contract entered into by Producers with California for the drilling of an oil well in navigable waters of the State of Louisiana in St. Martin Parish. The pertinent part of the indemnity provision reads as follows:

"14. Except as may be otherwise provided in paragraph 12 and paragraph 15 hereof, contractor alone shall be responsible for and shall indemnify and hold operator harmless from and against, *any damages or claims for injury to,* impairment of health of, or death of, persons, and damages to or loss of property *that may arise from contractor's operations* under this agreement. * * * " (Emphasis supplied.)

The agreement further provides for insurance to be carried by Producers, and in furtherance of these provisions of the contract Liberty Mutual undertook to insure the contractor's operations, the policy having a specific endorsement pertaining to the indemnity provisions of any and all contracts entered into by the insured.

In the original libel Seneca brought suit against the California Company alleging it to be the owner of the drilling barge upon which he was employed to work by Producers. He further alleged that he sustained injuries due to the unseaworthiness of this barge and the unfitness of its equipment and that he was of a class of persons to whom the doctrine of unseaworthiness applied; that he was employed by Producers, and his employer was negligent in the premises, declaring his suit to be under the provisions of the Jones Act. No specific factual allegation of negligence was made against California, its fault being predicated upon the condition of the drilling barge and its equipment, although the original and first amended libels alleged "unseaworthiness and/or negligence" to be the cause of his injuries.

As a matter of fact the drilling barge upon which libelant was employed belonged to Producers and was furnished

by them under the terms of the contract in question. Furthermore, the libelant was working as a member of the crew engaged by Producers to drill the well contemplated in this contract. These facts were well known to Producers and, by imputation, to its insurer, Liberty Mutual, from the inception of this suit.

It is also undisputed that California did not have a representative aboard the drilling barge at the time of Seneca's injury, but that this injury was reported to their representative by Producers' employee in charge of the operation when he went aboard the vessel at about ten o'clock a. m. The injury occurred at approximately 6:15 a. m. while the barge was being towed to the location, and at the time of the arrival of California's drilling engineer the injured Seneca had been removed from the vessel to a hospital for medical attention.

Under the foregoing facts, undisputed in this claim for indemnity, there is little doubt but what the injury and the claim advanced against California Company as a result thereof was such an injury as is contemplated in the above quoted indemnity clause of the operating agreement between these parties. The claim arose from the contractor's operations, and California had nothing whatsoever to do with the occurrence, Producers being an independent contractor for the drilling of the well.

California made immediate and timely demand upon Producers and Liberty to undertake defense of this suit. This demand was denied, the defendant in the cross-claim and third party petition of impleader taking the position that they were not called upon to defend in this situation, that if California was negligent and liable to Seneca as a result of such negligence then it was not covered under the terms of the indemnity clause. This proposition is generally correct, but we find that the facts simply do not justify its application in this instance.

█ That California was blameless and could not be held liable under any circumstances regardless of the allegations of the libel was known to Producers or to its authorized employees and agents from the very beginning. It was also known to them that the accident in question occurred during the course of Producers' operations. Under the plain and unambiguous language of the contract this was such a "claim" as they were called upon to indemnify California should liability result. Because of the refusal to defend, the indemnitee was required to employ proctors and incur other expense to be dismissed from the suit. It did this by establishing the facts outlined above, which were at all times within the knowledge of the defendants. Thus, irrespective of the question of Producers' fault in the premises, the obligation expressed in paragraph 14 of the contract quoted above was breached. Having chosen not to defend, defendants must now indemnify.

The defendants rely heavily upon Standard Oil Company of Texas v. Wampler, 218 F.2d 768 (5 Cir. 1955). We find this case to be inapposite. The opinion reflects that Standard Oil had been found liable for its own negligence to one of the employees of the contractor in that case, and consequently the indemnity provision of that contract, which is almost identical to that found here, had no application. Even applying the rule of strict construction to indemnity agreements against the indemnitee, California is entitled to recover in the case at bar.

Learned counsel for the defendants cites Appleman's Insurance Law and Practice (Vernon-West Ed. 1962), Vol. 7A § 4683, p. 436, and the case of Zipperer v. State Farm Mutual Automobile Insurance Co., 254 F.2d 853 (5 Cir. 1958), in support of their position. We do not find that these authorities lend defendants much comfort. If we accept the comparison between an insurance policy and an indemnity agreement, then it is clear from the quoted section of Appleman that the duty to defend this action was imposed upon these defendants. Considering the language of this contract and the allegations of the complaint, and considering further the fact that the indemnitors knew or should have known

through their agents, servants and employees, that the allegations of this libel to the effect that the barge in question was owned by the California Company were completely groundless, we can reach no other conclusion but that the action was within the ambit of the indemnity provision.

 In such cases, the obligation to defend is clear. 28 Am.Jur., Indemnity, § 22, pp. 470, 471; 42 C.J.S. Indemnity § 12, pp. 579–583. The injuries or claims to be indemnified must fall within the coverage of the contract. Here, the claim is in this category. Cf. Standard Oil Co. (N. J.) v. Robbins Dry Dock & Rep. Co., 25 F.2d 339 (E.D.N.Y.1928); Deep Vein Coal Co. v. Chicago & E. I. Ry. Co. et al., 71 F.2d 963 (7 Cir. 1934); United States Fidelity & Guaranty Co. v. Jones, 87 F.2d 346 (5 Cir. 1937); Sinclair Prairie Oil Co. v. Thornley, et al., 127 F.2d 128 (10 Cir. 1942); Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5 Cir. 1963).

Even assuming that California was technically at fault, the position most favorable to defendants, under well settled principles of Louisiana Law, California would be entitled to the indemnity sought here. See Mills v. Fidelity & Casualty Co. of New York, 226 F.Supp. 786 (W.D.La.1964, aff'd per curiam, Yuba Consol. Industries, Inc. v. Fidelity & Cas. Co. of New York, 338 F.2d 341 (5 Cir. Nov. 30, 1964). This assumption, however, is not justified under the facts as we find them in this case.

Since the California Company was dismissed from this suit on December 18, 1963, on its own motion for summary judgment, there is no liability for reimbursement of any damages suffered by Seneca. Attorney's fees and court costs, as well as reasonable disbursements, are included in such indemnity contracts, however, and in this instance they are fixed by stipulations and the affidavit of counsel representing The California Co., 27 Am.Jur. Indemnity, § 27, pp. 473, 474; 42 C.J.S. Indemnity § 13d, p. 585, et seq.

The affidavit of plaintiff's counsel discloses that he has worked some 200 hours and has incurred expenses in behalf of the California Company in the sum of $325.00. The stipulation filed states that attorney's fees of $5,000.00 are reasonable under these circumstances, and the Court agrees with this proposition on the basis of reimbursement for the lawyer's time at the rate of $25.00 per hour.

Judgment will be entered in favor of The California Company in the sum of $5,325.00, plus all costs incurred in defending this action up until the dismissal of California Company from the suit as above set forth.

Proctors for The California Company will prepare and submit to Proctors for the respondents a formal decree within ten days. Within five days thereafter the respondents shall either approve such decree as to form only and forward same to the Clerk of Court in Lafayette, or submit any suggested changes therein in the same manner.