[Civ. No. 12271. Third Dist. Nov. 19, 1971.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Respondent, v.
PAUL CUMMINGS et al., Defendants and Appellants.

**COUNSEL**

Changaris, Trezza, Ithurburn & Keeley and Harold D. Hadley for Defendants and Appellants.

Rich, Fuidge, Dawson, Marsh & Morris for Plaintiff and Respondent.

**OPINION**

**PIERCE, J.**\*—Defendants Paul and Gladys Cummings; Odie H. Pollard; and Owen (Monk) Walters and Earl Elledge, individually and as co-partners doing business as "Monk and Earl's Seaside Service," appeal from

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

a judgment for plaintiff insurer in a declaratory relief action. The action arose from the following circumstances:

The Cummings were the named insureds in a policy of standard automobile indemnity insurance (personal injury and property damage) issued to them by plaintiff State Farm Mutual Automobile Insurance Company. Coverage extended includes "all sums which the insured shall become legally obligated to pay . . . because of (A) bodily injury sustained by other persons . . . caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile . . . ."

On October 12, 1966, Cummings, while driving his insured vehicle, suffered an accident. Pollard was riding with him in the car. *No other vehicle was involved.* Cummings and Pollard, claiming injuries, brought an action against Walters and Elledge for their alleged negligent brake repair on the Cummings vehicle said to have caused the accident. Walters and Elledge tendered their defense to the Cummings' insurer. State Farm accepted the tender under an agreed reservation of rights which included the right to withdraw at any time. During the pendency of that action, the instant declaratory relief action was brought by State Farm. The issue raised was the duty of Cummings' insurer to defend Walters and Elledge as additional insureds in Cummings' (and Pollard's) personal injury action. On October 24, 1968, the trial court held Walters and Elledge not to be additional insureds and that consequently State Farm was not obligated to defend them. State Farm immediately withdrew its defense.

*Walters and Elledge Were Not Additional Insureds.*

As stated, appellants contend that Walters and Elledge are "additional insureds" under policy definitions of "insured" which include the following: "(4) [A]ny other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission, and (5) under coverages A and B any person or organization legally responsible for the use of such owned automobile by an insured as defined under the four subsections above." Coverages A and B under the policy were bodily injury and property damage liability, respectively.

An insurance policy is a contract. Contracts are to be interpreted according to the intent of the parties. (This oversimplification will be discussed in greater depth below.) If appellants' contention is correct, this standard automobile indemnification policy insuring the Cummings against *their*

liability to others is by the process of redefinition essentially transformed into one which insures others for all liability to the Cummings. We have not read a policy of that sort and no case involving such a policy has been cited to us. It is difficult to conceive an intent becoming thus expanded by court rule.

The meaning of the word "use" arises in many cases where insurance policies are construed. Sometimes two or more insurers are involved, one or more suing the others. One such case, *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700 [76 Cal.Rptr. 281], is a decision of this court. There, one Mathis had a truck liability policy issued by Exchange. While he was repairing his truck in the shop of Stapleton, insured by Pacific, a chain hoist which was part of the shop equipment of the latter broke, dropping the truck upon Mathis and hurting him. He brought an action based on Stapleton's negligence. Pacific called upon Exchange to join it in the defense of the action on the theory that the accident arose out of a "use" of the truck belonging to Mathis. Exchange rejected the invitation. Pacific settled Mathis' lawsuit,[1] then prosecuted the action against Exchange to recover a prorated share of the loss.

We held that Stapleton had not been "using" the truck within the terms of the policy. In the opinion (see p. 703 et seq. and see particularly fns. 1-7 on pp. 703, 704) many decisions are cited where variations in facts brought about disparate results. The facts in *Pacific Indemnity* differed from the facts here. There the repair job was not performed by the negligent garage owner. That we referred to as "a novel factual twist." But here we have another novel twist: The policy holder who was injured and insured only for indemnity is trying to convert his indemnity policy into one of all-risk coverage in his favor. If we were to hold that State Farm had extended indemnity coverage to Walters and Elledge for the benefit of Cummings and Pollard, we could as logically hold that State Farm has also extended coverage for "use" to the vehicle's manufacturer who made the car and the dealer who sold it for defects causing or enhancing injuries to the insured.

In *Pacific Indemnity, supra,* this court referred (270 Cal.App. 2d at p. 703, fn. 3) to *Yandle* v. *Hardware Mut. Ins. Co.* (1963) 314 F.2d 435, a Ninth Circuit case bearing similarities to the case before us. The negligence there involved was the improper welding of an axle. There, however, the casualty was not to the named insured. It was the wrongful death of another automobilist. The court held (on p. 437): "We agree with appellants that

---

[1] The printed opinion, 270 Cal.App.2d at page 702, contains a misprint. "Stapleton's" claim is referred to. "Mathis' " claim is meant. Stapleton had no suit against Mathis.

the word using is not synonymous with driving. A person is using a motor vehicle if he lets a friend drive it, Osborne v. Security Ins. Co., 155 Cal. App.2d 201, 318 P.2d 94 (1957); 'use' has also been defined to mean loading and unloading of a motor vehicle. See Columbia So. Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange, 190 Cal. App.2d 194, 11 Cal.Rptr. 762 (1961). But we have found no case which goes so far as to say that the repair of an axle is the use of a motor vehicle; and we think it cannot be extended that far. Cf. Commercial Standard Ins. Co. v. Bacon, 154 F.2d 360 (10th Cir., 1946)."

In *American Home Assur. Co.* v. *State Farm Mut. Auto. Ins. Co.* (1969) 1 Cal.App.3d 355 [81 Cal.Rptr. 732] (hg. den.), this court considered the same policy definitions of "the insured" as those in the case at bench. There, the named insured, Mrs. Crawford, was unloading boxes from the rear of her station wagon when she was injured because of a defect in the parking lot causing her to slip and fall. The owner of the defective premises contended that it "was a person or organization 'using' the Crawford automobile with Crawford's permission while *she* unloaded it and hence was covered for liability to her resulting from injuries which she incurred." (*Id.* at p. 358.) This court held (at p. 358): "We are unable to make the double back-flip of holding that a policy of insurance, issued to C to protect her against any liability she might incur as to M in the use of her vehicle, protects M against liability to her for personal injury incurred due to M's negligence, when the policy excludes any coverage for injury to herself."

*American Home Assurance Co.* was cited with approval and applied by our Supreme Court in *International Business Machines Corp.* v. *Truck Ins. Exchange* (1970) 2 Cal.3d 1026, 1030 [89 Cal.Rptr. 615, 474 P.2d 431].

The provisions of the policy now under discussion cover a risk which Vehicle Code section 16451 requires each policy of vehicle liability insurance to include. The code section coverage requirement is "against loss . . . imposed by law for damages arising out of ownership, maintenance, or use. . . ." Therefore, when we speak of such coverage we are talking about a matter of statutory interpretation. The language quoted, it seems to us, speaks only to liability of the insured and for which he must answer to third patries—in short, to indemnity insurance. It does not contemplate "all-risk" insurance to cover the insured's own injuries and those of persons to whom he owes no liability. (See *Pacific Indem. Co.* v. *Truck Ins. Exch.*, *supra*, 270 Cal.App.2d 700; *American Home Assur. Co.* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 1 Cal.App.3d 355.)

## There Was No Obligation to Defend

■■ The absence of coverage does not necessarily imply the absence of a duty on the part of a casualty insurance company to furnish a defense to an insured whether named or additional. The case most frequently cited on this subject is *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]. There, as in the case at bench, the insurance company had contracted to defend a suit against the insured "even if any of the allegations of the suit are groundless, false or fraudulent . . . ." The Supreme Court in *Gray* held that the insurer's liability to pay under a policy does not equate with its duty to defend. In *Gray*, a duty to defend was found irrespective of a duty to pay. The court based that holding on two theories: First, that "[t]he carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action" which it is called upon to defend (65 Cal.2d at p. 272); that the insurer had therefore held out a promise by its nature ambiguous and uncertain, and ambiguities and uncertainties are to be construed against insurers (particularly since the adhesion nature of the insurance contract is a strong factor to be considered); and secondly, by the express terms of the policy the insurer had agreed to defend a suit "which *potentially* seeks damages within the coverage of the policy . . . ." (65 Cal.2d at p. 275.) The lawsuit filed against the insured in *Gray* was of this nature.

It will be useful at this point to compare the facts in *Gray* with those in the case at bench. In *Gray*, the policy was one of "comprehensive personal liability." An exclusion excepted coverage for intentionally inflicted injuries. The facts of the instant case do not bring it within either the facts or theory enunciated in *Gray*. Here, there was no uncertainty. As we have shown, this was unequivocally a contract of indemnity insurance. When we compare the liability undertaken by the carrier under such a contract with the obligation undertaken by an insurer to an insured under a comprehensive personal liability policy, we compare apples and oranges.

*Gray, supra,* recognized that distinction. There the insurance company had incorrectly argued that if it were to be held liable to defend the action, the sky would be the limit; that, having undertaken to defend automobile accidents in which its insured was a defendant charged with negligence, it would be compelled to defend litigation involving a stairway accident. The court in *Gray* answered that by saying (at pp. 274-275): "As we have pointed out, in view of the language of the policy, the insured would reasonably expect protection in an action involving alleged bodily injury. On the other hand the insured could not reasonably expect protection under an automobile insurance policy for injury which occurs from defect in a stairway. Similarly an insured would not expect a defense for an injury

involving an automobile under a general comprehensive policy which excluded automobile coverage. *We look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend . . . ."* (Italics ours.) The analogy is not perfect but the language is applicable.

As regards the second prong of the *Gray* decision, there is here no potential coverage of Walters and Elledge under the State Farm policy.

Judgment affirmed.

Friedman, Acting P. J., and Janes, J., concurred.