NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE FARM MUTUAL AUTOMOBILE             )
INSURANCE COMPANY,                       )
                                         )
            Appellant,                   )
                                         )
v.                                       )        Case No. 2D16-4036
                                         )
MRI ASSOCIATES OF TAMPA, INC.,           )
d/b/a PARK PLACE MRI,                    )
                                         )
            Appellee.                    )
_____)

Opinion filed May 18, 2018.

Appeal from the Circuit Court for
Hillsborough County; Claudia Isom, Judge.

D. Matthew Allen and Chris W. Altenbernd
of Carlton Fields Jorden Burt, P.A., Tampa,
and Marcy Levine Aldrich and Nancy A.
Copperthwaite of Ackerman LLP, Miami,
for Appellant.

David M. Caldevilla of de la Parte & Gilbert,
P.A.; Kristin A. Norse and Stuart C.
Markman of Kynes, Markman, Felman,
P.A.; Craig E. Rothburd of Craig E.
Rothburd, P.A., John V. Orrick, Jr., of the
Law Offices of John V. Orrick, P.L., Tampa,
and Scott R. Jeeves of Jeeves Law Group,
P.A., St. Petersburg, for Appellee.

SLEET, Judge.

State Farm Mutual Automobile Insurance Company appeals the final declaratory judgment denying its motion for summary judgment and entering final judgment in favor of MRI Associates of Tampa, Inc., d/b/a Park Place MRI (Park Place). The circuit court ruled that State Farm's Personal Injury Protection (PIP) policy failed to clearly and unambiguously elect to limit reimbursement payments to the schedule of maximum charges described in section 627.736(5)(a)(1)–(5), Florida Statutes (2013). Because the express language of State Farm's PIP policy does clearly and unambiguously elect to limit reimbursement payments for medical expenses to the schedule of maximum charges, we reverse.

The facts are undisputed in this case. This action arises from nineteen individual PIP claims involving State Farm insureds who were injured in automobile accidents in 2013, received MRIs from Park Place, and subsequently executed assignments of benefits to Park Place. Park Place submitted the bills to State Farm under the insureds' PIP policies, and State Farm paid portions of each of the nineteen bills in accordance with its interpretation of its policy. Park Place disputed the amounts paid by State Farm, and State Farm filed an action seeking a declaration of its rights and obligations under its policy and the PIP statute, section 627.736. Park Place countersued, seeking a declaration of its rights and obligations under the State Farm policy and the PIP statute and an injunction to prevent State Farm from limiting its payments for charges to the schedule of maximum charges.[1]

_____

[1]In their appellate briefs and at oral argument, the parties also disputed whether the actual payments made by State Farm were in compliance with the schedule of maximum charges limitation. However, by stipulation of the parties, the trial court's summary judgment order was limited to the issue of whether State Farm's policy "lawfully invokes the schedule of maximum charges . . . set forth in section

To calculate the amount payable to Park Place for the MRI charges at issue, State Farm relied on the following language from its policy:

> *We* will pay in accordance with the *No-Fault Act* properly billed and documented *reasonable charges* for *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle* as follows:
>
> . . . .
>
> *We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

The policy defines a reasonable charge as follows:

> *Reasonable Charge*, which includes reasonable expense, means an amount determined by *us* to be reasonable in accordance with the *No-Fault Act*, considering one or more of the following:
> 1. usual and customary charges;
> 2. payments accepted by the provider;
> 3. reimbursement levels in the community;
> 4. various federal and state medical fee schedules applicable to *motor vehicle* and other insurance coverages;
> 5. the schedule of maximum charges in the *No-Fault Act*[;]
> 6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or
> 7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

---

627.736(5)(a)(1)"; therefore, whether the amount actually paid by State Farm complies with the schedule of maximum charges was not before the trial court and is thus outside the scope of our appellate review.

The State Farm policy tracks the method of reimbursement calculation outlined in section 627.736(5)(a)[2] and the limitation set forth in section 627.736(5)(a)(1).[3] State Farm contends that it is authorized under the 2013 PIP statute to limit its maximum payment to eighty percent of the schedule of maximum charges under section 627.736(5)(a)(1). Park Place disagrees, arguing that State Farm must elect either the reasonable charge method of calculation under section 627.736(5)(a) or the schedule of maximum charges method of calculation under section 627.736(5)(a)(1) and that because its policy includes both, State Farm relies on an "unlawful hybrid method" of reimbursement calculation. Park Place contends that because State Farm cannot elect both calculation methods, it must use the reasonable charge method as outlined in the definitions section of its policy and section 627.736(5)(a). We disagree.

_____

[2]Section 627.736(5)(a) provides:
**(5) Charges for treatment of injured persons.--**
(a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered . . . . In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

[3]Section 627.736(5)(a)(1) provides that "[t]he insurer may limit reimbursement to 80 percent of the . . . schedule of maximum charges."

This court reviews a final summary judgment de novo. Motzenbecker v. State Farm Mut. Auto. Ins. Co., 123 So. 3d 600, 602 (Fla. 2d DCA 2013) (reviewing a ruling on cross-motions for summary judgment where both parties sought declaratory relief); see also Allstate Ins. Co. v. Orthopedic Specialists, 212 So. 3d 973, 975 (Fla. 2017) ("Because the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law—specifically, the PIP statute—as well as to interpret the insurance policy, our standard of review is de novo." (quoting Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc., 141 So. 3d 147, 152 (Fla. 2013))). " '[L]egislative intent is the polestar that guides a court's inquiry under the No-Fault Law,' including the PIP statute. 'Such intent is derived primarily from the language of the statute.' " Virtual Imaging, 141 So. 3d at 154 (citation omitted) (quoting Allstate Ins. Co. v. Holy Cross Hosp., Inc., 961 So. 2d 328, 334 (Fla. 2007)).

In 1971 the Florida Legislature enacted the Florida Motor Vehicle No-Fault Law[4] "to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault[] and to require motor vehicle insurance securing such benefits." Id. at 152 (quoting § 627.731, Fla. Stat. (2008)). The mandate that an insurer reimburse a percentage of the reasonable expenses for medically necessary services "is the heart of the PIP statute's coverage requirements." Id. at 155. Under the 2013 version of the PIP statute, an insurer is required to pay the reasonable charges for medically necessary services under section 627.736(5)(a); however, it may elect to limit its payment using the schedule of maximum charges under section 627.736(5)(a)(1). See Virtual Imaging, 141 So. 3d at 150 ("[T]he PIP statute, section 627.736, *requires* the

_____

[4]See §§ 627.730–.7405.

insurer to pay for 'reasonable expenses . . . for medically necessary . . . services' but merely *permits* the insurer to use the Medicare fee schedules as a basis for limiting reimbursements." (citation omitted)).  To make this election, the insurer must provide notice to the insured in the policy.  § 627.736(5)(a)(5); see also Orthopedic Specialists, 212 So. 3d at 976–77.

In Virtual Imaging, the Florida Supreme Court considered "the effect of the 2008 amendments [to the PIP statute] on an insurer's ability to limit reimbursements" before the legislature enacted the notice requirement in 2012.  141 So. 3d at 154.  The 2008 PIP statute contained language similar to the 2013 PIP statute regarding the reasonable charge calculation method and the schedule of maximum charges limitation in subsections (5)(a)(1) and (5)(a)(2), respectively.  By placing the reasonable charge method and the fee schedules limitation in two separate but coequal subsections of 627.736(5)(a), the legislature created two distinct reimbursement calculation methodologies.  Id. at 156 ("[T]here *are* two different methodologies for calculating reimbursements to satisfy the PIP statute's reasonable medical expenses coverage mandate.").  The supreme court held that the statute thus "offered insurers a choice . . . to limit reimbursements based on the Medicare fee schedules or . . . based on the [reasonable charge] factors enumerated in section 627.736(5)(a)(1)."  Id. at 157.  Relying on the permissive language of section 627.736(5)(a)(2), the supreme court explained that an "insurer must clearly and unambiguously elect the [schedule of maximum charges] payment methodology in order to rely on it."  Id. at 158 (citing Kingsway Amigo Ins. Co. v. Ocean Health, Inc., 63 So. 3d 63, 67–68 (Fla. 4th DCA 2011)).  Because the insurer's policy made no specific reference to the schedule of

maximum charges, the supreme court ultimately concluded that it could not limit its reimbursement based on those fee schedules.  Id. at 160.

In Orthopedic Specialists, the supreme court considered the 2009 version of the PIP statute, which included language identical to the 2008 statute defining the reasonable charge and schedule of maximum charges calculation methodologies in subsections (5)(a)(1) and (5)(a)(2), respectively.  Relying on Virtual Imaging, the supreme court reaffirmed that the reasonable charge calculation methodology and the schedule of maximum charges limitation were separate and distinct and that each individually "satisf[ied] the PIP statute's reasonable medical expenses coverage mandate."  Orthopedic Specialists, 212 So. 3d at 976.  But the supreme court went on to explain that the insurer's "PIP policy cannot contain a statement that the insurer will not pay eighty percent of reasonable charges because no insurer can disclaim the PIP statute's reasonable medical expenses coverage mandate" and that the policy cannot "state that the insurer will calculate benefits solely under the Medicare fee schedules contained within section 627.736(5)(a)(2) because the Medicare fee schedules are not the only applicable mechanism for calculating reimbursements under the permissive payment methodology."  Id. at 977 (noting that the schedule of maximum charges outlined in section 627.736(5)(a)(2) contained both Medicare fee schedules and non-Medicare fee schedules).  Accordingly, the supreme court expressly rejected the argument urged by Park Place in this appeal, that an insurer's policy must completely disclaim the reasonable charge methodology to elect the schedule of maximum charges limitation.  Id. at 975 (rejecting the Fourth District's holding that a "policy must make it inescapably discernable that it will not pay the 'basic' statutorily required coverage

[mandate of eighty percent of reasonable expenses for medically necessary services] and will instead substitute the Medicare fee schedules as the exclusive form of reimbursement" (alteration in original) (quoting Orthopedic Specialists v. Allstate Ins. Co., 177 So. 3d 19, 26 (Fla. 4th DCA 2015))). Because the insurer's policy "clearly and unambiguously state[d] that '[a]ny amounts payable' for medical expense reimbursements 'shall be subject to any and all limitations, authorized by section 627.736, . . . including . . . all fee schedules,' " the supreme court concluded that the policy adequately placed the insured and service providers on notice of the insurer's election of the schedule of maximum charges limitation. Id. at 977–78 (second alteration in original).

Significantly, neither Virtual Imaging nor Orthopedic Specialists applies to policies created after the 2012 amendment to the PIP statute, which the State Farm policy at issue in this case was. See Orthopedic Specialists, 212 So. 3d at 974; Virtual Imaging, 141 So. 3d at 150 ("[O]ur holding applies only to policies that were in effect from the effective date of the 2008 amendments to the PIP statute that first provided for the Medicare fee schedule methodology, which was January 1, 2008, through the effective date of the 2012 amendment, which was July 1, 2012.").

In 2012 the legislature substantially amended section 627.736(5), setting forth the schedule of maximum charges limitation as a subsection of the reasonable charge calculation methodology. Ch. 2012-197, § 10, at 2743–44, Laws of Fla. As a result of this amendment, the reasonable charge and schedule of maximum charges methodologies are no longer coequal subsections of 627.736(5)(a); instead the reasonable charge method is set forth in subsection (5)(a), and the schedule of

- 8 -

maximum charges limitation is provided in subsection (5)(a)(1). Based on the current construction of the PIP statute, we conclude that there are no longer two mutually exclusive methodologies for calculating the reimbursement payment owed by the insurer. See Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee, 189 So. 3d 120, 126 (Fla. 2016) ("When a statute is amended to change a key term or to delete a provision, 'it is presumed that the Legislature intended it to have a meaning different from that accorded to it before the amendment.' " (quoting Carlile v. Game & Fresh Water Fish Comm'n, 354 So. 2d 362, 364 (Fla.1977))). The 2013 PIP statute includes the fact-dependent calculation of reasonable charges as a part of the definition of "[c]harges for treatment of injured persons" under section 627.736(5)(a). And an insurer may not disclaim the fact-dependent calculation; however, it may elect to limit its payment in accordance with the schedule of maximum charges under subsection (5)(a)(1)(a)–(f). Accordingly, we reject Park Place's argument that State Farm's policy contains an "unlawful hybrid method" of reimbursement calculation and is therefore impermissibly vague. State Farm's inclusion of the statutory factors in its definition of reasonable charges tracks the PIP statute and is not inconsistent with the policy language limiting reimbursement to the schedule of maximum charges.

"Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." Orthopedic Specialists, 212 So. 3d at 975–76 (quoting Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013)). State Farm's policy clearly and unambiguously states that "in no event will *we* pay more than 80% of the . . . *No-Fault Act* 'schedule of maximum charges.' " The policy also includes

language virtually identical to that of section 627.736(5)(a)(1)(a)–(f), listing verbatim all of the applicable fee schedules that it will use to limit reimbursement. State Farm's policy language is even more clear and unambiguous than that at issue in Orthopedic Specialists, which "state[d] that '[a]ny amounts payable' for medical expense reimbursements 'shall be subject to any and all limitations, authorized by section 627.736, . . . including . . . all fee schedules.' " 212 So. 3d at 977; see also Allstate Indem. Co. v. Markley Chiropractic & Acupuncture, LLC, 226 So. 3d 262, 266 (Fla. 2d DCA 2016), review denied, no. SC16-1100 (Fla. Aug. 4, 2017). Because the State Farm policy includes mandatory language expressly limiting reimbursement for reasonable medical expenses to the schedule of maximum charges set forth in section 627.736(5)(a)(1)(a)–(f), we conclude that it is sufficient to place insureds and service providers on notice as required by section 627.736(5)(a)(5). Accordingly, we reverse the trial court's order granting summary judgment in favor of Park Place, and we certify the following question of great public importance:

> DOES THE 2013 PIP STATUTE AS AMENDED PERMIT AN INSURER TO CONDUCT A FACT-DEPENDENT CALCULATION OF REASONABLE CHARGES UNDER SECTION 627.736(5)(a) WHILE ALLOWING THE INSURER TO LIMIT ITS PAYMENT IN ACCORDANCE WITH THE SCHEDULE OF MAXIMUM CHARGES UNDER SECTION 627.736(5)(a)(1)?

> Reversed and remanded for further proceedings consistent with this opinion; question certified.

CASANUEVA and CRENSHAW, JJ., Concur.

- 10 -